BLUECROSS BLUESHIELD OF )
TENNESSEE as Claims Administrator, )
for the VP BUILDINGS, INC. )
HEALTH BENEFIT PLAN, and )
VP BUILDINGS, INC. )
 )
     *Plaintiffs,* )
*v.* ) No.1:07-cv-180
 ) *Edgar*
DOCTORS MEDICAL CENTER OF )
MODESTO, INC., )
 )
     *Defendants.* )

## MEMORANDUM

Plaintiffs BlueCross BlueShield of Tennessee, Inc. ("BCBST"), VP Buildings, Inc. Health Benefit Plan, and VP Buildings, Inc. (collectively "Plaintiffs") have brought an amended complaint for declaratory judgment pursuant to 28 U.S.C. § 2201 in this court. [Court Doc. No. 23]. Plaintiffs seek a declaration that their decision regarding the administration of benefits under a group health care policy was valid pursuant to the terms of the plan and the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").

Defendant Doctors Medical Center of Modesto, Inc. ("DMCM") now moves to dismiss Plaintiffs' amended complaint for lack of jurisdiction. [Court Doc. Nos. 7, 22]. This Court has reviewed the record and the arguments of the parties and has determined that DMCM's motion will be GRANTED.

## I.       Background

The parties appear largely to agree on the relevant facts. BCBST is the claims administrator for the VP Buildings, Inc. Health Benefit Plan. Amended Complaint, ¶ 1. VP Buildings is a manufacturer of steel system metal buildings with offices in various states, including Tennessee and California. *Id.* at ¶ 9. VP Buildings formed a self-funded group health plan, Group Health Plan No. 82043 (the "Plan"), to provide its employees and their dependents with health care benefits. *Id.* at ¶ 9; [Court Doc. No. 23-2, Plan]. The Plan provides that BCBST is the claims administrator, while VP Buildings is the Plan Fiduciary, Plan Sponsor, and Plan Administrator. Plan, p. 1. The Plan states:

> While the Employer has delegated discretionary authority to make any benefit or eligibility determinations to the administrator, the Employer retains the authority to make any final determination. The Employer, as the Plan Administrator, also has the authority to construe the terms of Your Coverage. The Plan shall be deemed to have properly exercised that authority unless it abuses its discretion when making such determinations, whether or not the Employer's benefit plan is subject to ERISA.

Plan, p. 1.

An employee of VP Buildings, Norman Thomas, was a participant in the Plan. While he was in California, Mr. Thomas apparently required some health care treatment by DMCM. DMCM had entered into a contract with Blue Cross of California, an entity with which BCBST is unaffiliated. [Court Doc. Nos. 5, 5-2]. This contract is known as the Comprehensive Contracting Hospital Agreement ("CCHA"). *Id.* The CCHA states that it:

> constitutes a contract between [DMCM] and [Blue Cross of California] as an independent corporation, operating under a license with the Blue Cross and Blue Shield Association, an association of independent Blue Cross and Blue Shield Plans (the "Association") permitting [Blue Cross of California] to use the Blue Cross service mark in the State of California and that [Blue Cross of California] is not contracting as an agent of the Association.

CCHA, ¶ 3.5.

The CCHA allowed Mr. Thomas to take advantage of a program called the "Blue Card Program" for provision of health care treatment while he was in California. The "Blue Card Program" provides:

> the mechanism by which [Blue Cross of California], as the host plan, arranges for the payment of care rendered to Blue Cross and/or Blue Shield Members of out-of-state plans by [DMCM]. Blue Card Program Members include those who hold the applicable Blue Cross/Blue Shield plan identification card as well as those who hold a BCBSA National PPO, National POS or HMO-USA identification card.

CCHA, ¶ 2.4. The CCHA provides for Blue Cross of California to take advantage of negotiated health care rates with DMCM while DMCM receives Blue Cross of California's endorsement as a "Participating Hospital", which directs its members to DMCM's health care facilities. CCHA, ¶ 4.1, 5.2, 5.4, 6.6. The Blue Card Program allowed Mr. Thomas to take advantage of Blue Cross of California's negotiated rates of treatment with DMCM. Amended Complaint, ¶ 16.

On February 17, 2005 DMCM submitted a request for prior authorization for inpatient hospitalization for Mr. Thomas. Amended Complaint, ¶ 17. BCBST followed its procedures for evaluating requests for benefit authorization and forwarded the request to the "Utilization Management Department" ("UMD") for review and a decision on whether the treatment was authorized under the Plan. *Id.* at ¶ 18. The UMD reviewed the request and Mr. Thomas' records and determined that Mr. Thomas' condition warranted two days of inpatient hospitalization under the Plan. *Id.* at ¶ 19. When DMCM requested an extension of the inpatient stay, BCBST agreed to extend Mr. Thomas' inpatient hospital stay by two days until February 21, 2005. *Id.* at ¶ 20. However, Mr. Thomas remained in inpatient care until February 27, 2005. On March 2, 2005 BCBST denied approval for the inpatient hospitalization between February 21st and February 27th because it determined that Mr. Thomas' symptom, difficulty breathing, failed to

meet the standard for acute inpatient care. BCBST's letter to DMCM states in part:

> Review of the clinical information submitted shows the current level of services being provided to treat for difficulty in breathing fails to meet criteria for continued acute inpatient hospitalization. The level of services being rendered could be provided safely in a different setting, which may include a sub-acute care unit, skilled nursing facility, or home health care services. The request for continued acute inpatient hospitalization is not eligible for payment.

[Court Doc. No. 23-4].

On May 16, 2005 DMCM appealed the decision to deny payment, a cost of approximately $20,000. In accordance with its procedures for appeal, BCBST obtained an opinion from an independent hematologist/oncologist regarding whether the extended inpatient hospitalization was covered under the Plan. Amended Complaint, ¶ 23. The independent physician reviewed Mr. Thomas' medical records and determined that the extended treatment was not "medically necessary" as defined by the Plan. BCBST reviewed the independent determination and its prior decision, and based upon that review, affirmed its prior decision. *Id.* at ¶ 25; [Court Doc. No. 23-5].

Following denial of its appeal, DMCM filed a Demand for Arbitration against Blue Cross of California with the American Arbitration Association in California seeking payment of $20,028.00 for Mr. Thomas' unpaid medical bills. Amended Complaint, ¶ 27. DMCM subsequently amended the Demand for Arbitration on July 3, 2007 to include BCBST as a party against whom the Demand for Arbitration was made. [Court Doc. No. 4-2]. The Demand for Arbitration states: "[t]he named claimant, a party to an arbitration agreement contained in a written contract, dated 02/01/05 and providing for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration thereunder." [Court Doc. No. 4-2]. The Demand describes the nature of the dispute as follows: "[f]ailure to

reimburse hospital pursuant to contract rates for services provided to the patient listed on Exhibit A." Exhibit A of the Demand states an active balance of $20,028.00 for Norman Thomas. It asserts that the type of claim is one of "Medical Necessity." *Id.* The CCHA also defines the term "Medically Necessary." CCHA, ¶ 2.19.

The CCHA contains an arbitration provision that states:

Any problem or dispute arising under this Agreement and/or concerning the terms of this Agreement, other than a Utilization Review decision as provided for in Article VII, that is not satisfactorily resolved under Section 9.1, shall be arbitrated. BLUE CROSS [of California] and [DMCM] agree to use binding arbitration for any such problem or dispute under the Commercial Rules of the American Arbitration Association, unless otherwise mutually agreed in writing by BLUE CROSS [of California] and [DMCM]. The arbitration shall also be subject to the California Code of Civil Procedure . . . unless otherwise mutually agreed. Such arbitration shall be initiated by either party making a written demand for arbitration on the other party.

CCHA, ¶ 9.1

BCBST asserts that it is not a party to the CCHA. It appears clear that BCBST did not sign the CCHA. However, the CCHA contains provisions that purport to bind defined entities such as "Affiliates" and "Other Payors." For instance, the CCHA states that "This AGREEMENT is effective on January 1, 1996, between BLUE CROSS OF CALIFORNIA and Affiliates as defined below . . . and [DMCM]." CCHA, p. 1. The Amendment to the CCHA, effective February 1, 2005, includes similar language regarding Affiliates. [Court Doc. No. 5]. An "Affiliate" is defined as a "corporation or other organization owned or controlled, either directly or through parent or subsidiary corporations, by Blue Cross of California, or under common control with Blue Cross of California." CCHA, ¶ 2.1. BCBST asserts that it does not fit the definition of an Affiliate under the CCHA.

The CCHA also contains provisions relating to "Other Payors." The CCHA defines

"Other Payors" as "persons or entities utilizing the Managed Care Network pursuant to an

agreement with [Blue Cross of California], including without limitation, other Blue Cross and/or

Blue Shield Plans, self-administered or self-insured programs providing health care benefits; or

employers or insurers." CCHA, ¶ 2.21. The CCHA further provides that

> [DMCM] agrees that when the Managed Care Network is utilized by an Affiliate
> or Other Payor, [DMCM] agrees to provide services to Covered Persons of that
> Affiliate or Other Payor in accordance with the terms of this Agreement. In all
> events, however, [DMCM] shall look for payment only to the particular Affiliate
> or Other Payor that covers the particular services for which [DMCM] seeks to be
> compensated. . . . [Blue Cross of California] shall require that Other Payor
> compensate Provider in accordance with the terms of this Agreement. . . . When
> an Other Payor utilizes the Managed Care Network, [DMCM] shall follow such
> Other Payor's specified utilization review requirements.

CCHA ¶ 4.10.

On July 25, 2007 BCBST filed its initial complaint in this court. [Court Doc. No. 1].

BCBST seeks a declaratory judgment pertaining to the appropriateness of its decision to deny

extended hospitalization benefits to Mr. Thomas on the basis of lack of medical necessity in

accordance with the terms of the Plan. DMCM moved to dismiss the complaint for lack of

subject matter jurisdiction, personal jurisdiction, and improper venue. [Court Doc. No. 6].

BCBST then moved to amend its complaint to add VP Buildings, Inc. Health Benefit Plan and

VP Buildings as plaintiffs. [Court Doc. No. 13]. This Court granted BCBST's motion. [Court

Doc. Nos. 21, 34]. DMCM then amended its motion to dismiss to account for the newly added

parties. [Court Doc. No. 22]. BCBST then filed its amended complaint. [Court Doc. No. 23].

DMCM does not purport to be seeking payment on behalf of Mr. Thomas or as an assignee of

Mr. Thomas, nor does the record contain any evidence that Mr. Thomas assigned his right to

Plan benefits to DMCM. DMCM states in its motion to dismiss that it "is not asserting the

patient's rights under ERISA."  [Court Doc. No. 7, p. 13].

## II.      Analysis

## A.      Standard of Review

DMCM brings a motion to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction.  DMCM also argues that venue is not proper in this court.  Federal Rule of Civil Procedure 12(b) provides in relevant part:

> Every defense to a claim for relief in any pleading must be asserted in the
> responsive pleading if one is required.  But a party may assert the following
> defenses by motion:
> (1) lack of subject-matter jurisdiction;
> (2) lack of personal jurisdiction;
> (3) improper venue; . . . .

Fed. R. Civ. P. 12(b)(1)-(3).[1]

## 1.      Dismissal Pursuant to Fed. R. Civ. P. 12(b)(1)

"When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  Further, a district court may "resolve factual disputes when necessary to resolve challenges to subject matter jurisdiction."  *Id.*  The Sixth Circuit adheres to the standard of review for Rule 12(b)(1) motions explained in *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 890 (3d Cir. 1977):

> The basic difference among the various 12(b) motions is, of course, that 12(b)(6)
> alone necessitates a ruling on the merits of the claim, the others deal with
> procedural defects.  Because 12(b)(6) results in a determination on the merits at
> an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having

---

[1] Rule 12 has been revised as of December 1, 2007.  However, although the wording of the rule has changed slightly, the relevant substance of Rule 12 as pertinent to this motion remains unchanged.

> all its allegations taken as true and all inferences favorable to plaintiff will be drawn. The decision disposing the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations he or she would be unable to prevail. In the interests of judicial economy it is not improper to dispose of the claim at that stage. . . .
>
> The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different. At the outset we must emphasize a crucial distinction, often overlooked between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.Pro. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction–its very power to hear the case–there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting

*Mortensen*, 549 F.2d at 890-91). The motion to dismiss before the court includes many materials

beyond the complaint; therefore, this court will weigh the facts in determining whether it has

jurisdiction.

The Sixth Circuit has noted that "'[g]enerations of jurists have struggled with the

difficulty of distinguishing between Rules 12(b)(1) and 12(b)(6) in federal question cases.'"

*Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 517 (6th Cir. 2006) (quoting *Nowak v.*

*Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996)). It has further explained

the standard of review for a motion brought pursuant to Fed. R. Civ. P. 12(b)(1) with respect to

ERISA claims:

> Our application of *Eberhart* and *Kontrick* to the instant case faithfully adheres to the Supreme Court's jurisprudence addressing situations where, as here, both the court's subject-matter jurisdiction and the substantive claim for relief are based

on the same federal statute.  The Supreme Court has set forth the standard in such cases:

Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."

This requirement of substantiality or non-frivolousness of the federal question refers "to whether there is any legal substance to the position the plaintiff is presenting."  An ERISA claim can be non-frivolous (or sufficiently substantial) even if it is "unsuccessful and possibly verging on the foolhardy" in light of prior precedent barring the relief sought. . . . Although in many ERISA cases prior precedent will almost certainly preclude the sought remedy, the decision whether to classify a particular claim as legal or equitable presents a sufficiently substantial and non-frivolous issue for federal courts to exercise subject-matter jurisdiction over actions arising under section 1132(a)(3).

*Primax Recoveries, Inc.*, 433 F.3d at 519 (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) and 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3564 (2d ed. 1984)).

### 2.    Dismissal Pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(3)

In analyzing whether personal jurisdiction exists, the Sixth Circuit has found that "[p]ersonal jurisdiction over an out-of-state defendant arises from 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).  Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" or where any defendant resides or can be found.  28 U.S.C. § 1391(b); *see also, First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).

Plaintiff bears the burden of demonstrating personal jurisdiction.  *See Neogen Corp. v.*

*Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *Pride Distributors, Inc. v. Nuzzolo*, No. 05-cv-7441-DT, 2007 WL 1098286 (E.D. Mich. Apr. 10, 2007). If a district court does not conduct an evidentiary hearing on personal jurisdiction when considering the motion to dismiss, a plaintiff must demonstrate only a prima facie showing of personal jurisdiction. *Neogen Corp.*, 282 F.3d 887. A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Id.* (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). The court must consider the facts in the light most favorable to the nonmoving party and must not consider conflicting facts offered by the defendant. *Neogen Corp.*, 282 F.3d at 887.

Federal Rule of Civil Procedure 4(k)(1)(A) provides that personal jurisdiction must be based on the law of the forum state. Thus, Tennessee's long-arm statute must apply in this case. Tennessee's long-arm statute "extends the personal jurisdiction of Tennessee courts to the limits of the Due Process Clause." *ACH Food Companies, Inc. v. Wiscon Corp.*, No. 04-2589 MI/V, 2005 WL 2114056 at *7 (W.D. Tenn. Aug. 30, 2005); Tenn. Code Ann. § 20-2-214(a)(6); *Payne v. Motorists' Mut. Ins. Co.*, 4 F.3d 452, 455 (6th Cir. 1993).

Due Process concerns will be met as long as a "defendant has 'certain minimum contacts' with the forum such that the exercise of personal jurisdiction 'does not offend traditional notions of fair play and substantial justice'" *Cupp v. Alberto-Culver USA, Inc.*, 308 F.Supp.2d 873, 877 (W.D. Tenn. 2004) (quoting *International Shoe Co.*, 326 U.S. at 316). Personal jurisdiction must be either general or specific. General jurisdiction may exist where a defendant "has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant . . ." *Kerry*

*Steel, Inc. v. Paragon Indust., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (citing *Helicopteros*

*Nacionales de Colombia S.A. v. Hall*, 466 US. 408, 414-415 & nn. 8-10 (1984)).

Specific jurisdiction, on the other hand, "exposes the defendant to suit in the forum state

only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel,*

*Inc.*, 106 F.3d at 149 (quoting *Helicopteros Nacionales*, 466 U.S. at 414-415).  The Sixth Circuit

has established a three-part test to determine whether specific jurisdiction exists:

> First the defendant must purposely avail himself of the privilege of acting in the
> forum state or causing a consequence in the forum state.  Second, the cause of
> action must arise from the defendant's activities there.  Finally, the acts of the
> defendant or consequences caused by the defendant must have a substantial
> enough connection with the forum state to make the exercise of jurisdiction over
> the defendant reasonable.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (quoting *Southern Machine Co.*

*v. Mohasco Indust., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

However, if subject matter jurisdiction exists due to the presence of an ERISA claim,

then personal jurisdiction does not require an evidentiary showing of the minimum contacts as

set forth in *International Shoe*.  ERISA's jurisdictional provision states that "[w]here an action

under this subchapter is brought in a district court of the United States, it may be brought in the

district where the plan is administered, where the breach took place, or where a defendant resides

or may be found, and process may be served in any other district where a defendant resides or

may be found."  29 U.S.C. § 1132(e)(2).

In interpreting 29 U.S.C. § 1132(e)(2), "[r]ather than asking whether the defendant has

sufficient minimum contacts with the forum state for the exercise of jurisdiction to comport with

traditional notions of fair play and substantial justice, as courts do when relying on a state's

long-arm statute to establish territorial jurisdiction, a court should ask whether the defendant has

sufficient minimum contacts with the United States." *Medical Mutual of Ohio v. deSoto*, 245 F.3d 561, 566 (6th Cir. 2001). As the Sixth Circuit has explained "[p]ersonal jurisdiction under § 1132(e)(2) depends upon subject matter jurisdiction under § 1132(a)(3)." *NGS American, Inc. v. Jefferson*, 218 F.3d 519, 524 (6th Cir. 2000). Thus, the "pertinent question for personal jurisdiction" in an ERISA case "becomes whether the district court had proper subject matter jurisdiction *under § 1132(a)(3)*." *Id.*

## B.      Jurisdiction Pursuant to ERISA

BCBST claims that federal question jurisdiction exists in this case because the action involves an application of ERISA. Amended Complaint, ¶¶ 3,4. ERISA's Section 502 provides for plan participants, beneficiaries, and fiduciaries to bring civil enforcement actions. 29 U.S.C. § 1132. The statute allows participants, beneficiaries, and fiduciaries to seek several different kinds of relief. It provides in relevant part:

> (a) Persons empowered to bring a civil action
> A civil action may be brought–
> (1) by a participant or beneficiary–
>> (A) for the relief provided for in subsection (c) of this section, or
>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)-(3).

## 1.      Subject-Matter Jurisdiction Under ERISA

BCBST argues that its claim for declaratory judgment arises pursuant to 29 U.S.C. §

1132(a)(3).  It asserts that it is a fiduciary seeking equitable relief in accordance with that

provision.

DMCM first argues that BCBST is not a fiduciary.  However, the language of the Plan

and the definition of "fiduciary" under ERISA indicate that BCBST is a fiduciary as defined by

ERISA.  ERISA provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such
> plan or exercises any authority or control respecting management or disposition
> of its assets, . . . or (iii) he has any discretionary authority or discretionary
> responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  The Plan indicates that:

> [VP Buildings, Inc.] has entered into an Administrative Services Agreement with
> BCBST for it to administer the claims Payments under the terms of the SPD, and
> to provide other services.  BCBST is not the Plan Sponsor, the Plan Administrator
> or the Plan Fiduciary, as those terms are defined in ERISA.  [VP Buildings, Inc.]
> is the Plan Fiduciary, the Plan Sponsor and the Plan Administrator. . . . While [VP
> Buildings, Inc.] has delegated discretionary authority to make any benefit or
> eligibility determinations to the administrator, [VP Buildings, Inc.] retains the
> authority to make any final determination.

Plan, p. 1.

Although the Plan asserts that BCBST is not the Plan Fiduciary as defined by ERISA, it

clearly states that BCBST has the discretionary authority to make benefit determinations.  Thus,

BCBST is a fiduciary under ERISA and, as such, may bring a cause of action pursuant to 29

U.S.C. § 1132(a)(3).  In addition, BCBST has amended its complaint to include the designated

plan administrator and fiduciary, VP Buildings, Inc. as well as the Plan itself.  However, even

with the addition of the new parties and even if BCBST is a fiduciary, it is not entirely clear that

the Plaintiffs' claims fall within the ambit of 29 U.S.C. § 1132(a)(3).

Is BCBST's claim for declaratory judgment an appropriate request for equitable relief

pursuant to 29 U.S.C. § 1132(a)(3)?  Under 29 U.S.C. § 1132(a)(3) a fiduciary may bring a claim

"(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of

the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to

enforce any provisions of this subchapter or the terms of the plan . . . ."  29 U.S.C. § 1132(a)(3).

BCBST does not seek an injunction; therefore, its claim does not fall under 29 U.S.C. §

1132(a)(3)(A).  BCBST also does not claim that it is seeking equitable relief against DMCM to

redress a violation of the Plan or of ERISA, nor could it do so because DMCM does not have

any obligations under the Plan or ERISA.  Thus, 29 U.S.C. § 1132(a)(3)(B)(i) does not apply.

BCBST argues that its claim for declaratory judgment is appropriate pursuant to 29 U.S.C. §

1132(a)(3)(B)(ii).  Essentially, BCBST is asserting that its claim seeks appropriate "equitable

relief" to "enforce" ERISA or the terms of the Plan.

A declaratory judgment action is neither inherently legal nor equitable in nature.  *See*

*Gulf Life Ins. Co. v. Arnold*, 809 F.2d 1520 (11th Cir. 1987); *Sanders v. Louisville & N.R. Co.*,

144 F.2d 485, 486 (6th Cir. 1944); *Toledo Museum of Art v. Ullin*, 477 F.Supp.2d 802, 806 (N.D.

Ohio 2006); *Mutual of New York v. Shaya*, 970 F.Supp. 1226, 1227 (E.D. Mich. 1997).  As the

Sixth Circuit has noted, "a declaratory action is not equitable where it substitutes for a defense to

claims on a contract in an underlying suit."  *NGS American, Inc.*, 218 F.3d at 526.  Whether a

claim for declaratory judgment is legal or equitable in nature will turn on "the character of the

threatened action, and not of the defense."  *Rodriguez v. Tennessee Laborers Health and Welfare*

*Fund*, 463 F.3d 473, 476-77 (6th Cir. 2006) (quoting *Public Service Comm. v. Wycoff Co.*, 344

U.S. 237, 248, 73 S.Ct. 236 (1952); *Franchise Tax Board v. Construction Laborers Vacation*

*Trust*, 463 U.S. 1, 16 (1983)).

In this case the threatened action is a state court arbitration against BCBST brought by a health care provider to recoup the cost of health care provided to a patient pursuant to an arbitration agreement.  The underlying breach of contract action for monetary damages appears entirely legal in nature.  *See e.g., Reynolds v. Stahr*, 758 F.Supp. 1276, 1280 (W.D. Wis. 1991); *Connecticut General Life Ins. Co. v. Cole*, 821 F.Supp. 193, 197 (S.D.N.Y. 1993) (noting that "the underlying controversies in this case are defendants' contractual claims to benefits under the accident insurance policy and the life insurance policies.  Since a contractual claim to benefits is a *legal* claim, the declaratory judgment plaintiffs seek is a form of *legal* relief. . ."); *KLLM, Inc. Employee Health Protection Plan v. Ontario Comm. Hosp.*, 947 F.Supp. 262, 266 (S.D. Miss. 1996); *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1251 (9th Cir. 1987) (concluding that "[d]efendant's contractual claim to benefits, the source of Transamerica's case, is clearly a legal one"); *Gulf Life Ins. Co.*, 809 F.2d at 1523.

The court recognizes that the Sixth Circuit has indicated that a court may still have ERISA jurisdiction over a declaratory action even if the fiduciary is not requesting equitable relief.  The Sixth Circuit distinguishes between dismissal for lack of jurisdiction and dismissal for failure to state a claim in such situations.  *See e.g., Rodriguez*, 463 F.3d 473; *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 517 (6th Cir. 2006).  Thus, due to the loose standard for assertion of subject matter jurisdiction outlined in *Primax*, the court concludes that BCBST has established subject matter jurisdiction under ERISA, despite the legal nature of the relief sought and despite this court's ultimate conclusion that its request for relief is not within the purview of 29 U.S.C. § 1132(a)(3)(B)(ii).  *See* 433 F.3d at 517.

## 2.    Personal Jurisdiction Under ERISA

BCBST must still demonstrate personal jurisdiction under ERISA. Even if BCBST's request for declaratory relief that is legal in nature does not preclude this court from exercising subject matter jurisdiction, BCBST must still demonstrate that its claim seeks to "enforce" either the Plan or ERISA to be a valid claim under 29 U.S.C. § 1132(a)(3)(B)(ii) and to access the nationwide service of process provision of 29 U.S.C. § 1132(e). As emphasized *supra*, the use of the nationwide service of process provision requires that an action must be brought "under this subchapter," i.e. ERISA. 29 U.S.C. § 1132(e); *see also*, *NGS American, Inc.*, 218 F.3d at 524.

BCBST describes its claim as follows: "Plaintiff is requesting an interpretation of the Plan terms and a judgment that the decision to deny benefits under it was proper." [Court Doc. No. 15, p. 9]. Several different federal courts disagree with BCBST's claim that a fiduciary's request for a court to *interpret* the terms of an ERISA plan constitutes an "enforcement" of that plan pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii).

For instance, in *Gulf Life Ins. Co.*, the Eleventh Circuit addressed whether personal jurisdiction existed in a declaratory judgment action brought by an ERISA plan fiduciary to determine its liability for benefits under the terms of that plan. 809 F.2d 1520. The fiduciary brought suit against the beneficiary in federal district court in Florida instead of in Tennessee, where the beneficiary at issue worked and resided. *Id.* at 1522. The fiduciary argued that venue was proper under ERISA's nationwide service of process provision, 29 U.S.C. § 1132(e)(2), just as BCBST is arguing in this case. However, as the Eleventh Circuit pointed out, the nationwide service of process is only applicable if the action arises under ERISA. The fiduciary claimed the action arose under 29 U.S.C. § 1132(a)(3)(B)(ii). The Eleventh Circuit disagreed, holding "that

the suit was not one for 'equitable relief'; nor was it an action 'to enforce' the plan or the subchapter." *Id.* at 1523.  The court first determined that the fiduciary's suit was not equitable in nature by looking at the basic nature of the underlying issue – whether the beneficiary was entitled to the severance pay he claimed – and determined that it was legal in nature.

Then the court examined whether the fiduciary's action fit within the parameters of 29 U.S.C. § 1132(a)(3)(B)(ii).  It noted:

> [The fiduciary's] declaratory judgment action simply is unnecessary to further the statute's purpose.  The purpose essential to section 1132(a)(3)(B) is to enforce the terms of the plan or ERISA; all Gulf Life need do to enforce the terms of the plan, assuming it contends the claim for benefits is invalid, is deny payment.  Moreover, an action "to enforce" means an action to compel someone to do something or not to do something, such as make contributions, that ERISA or the plan requires be done or not done.  Gulf Life's action is defensive in nature; the company simply wishes to avoid making payment that [the beneficiary] claims is due.  Seeking a declaration of its liability does not "enforce" the plan.

> A reading of the other subsections of section 1132 makes it even clearer that Congress did not intend ERISA fiduciaries to use declaratory judgment actions to determine the benefit rights of participants/beneficiaries.  Section 1132 is essentially a standing provision: it sets forth those parties who may bring civil actions under ERISA and specifies the types of actions each of those parties may pursue.  These standing provisions must be construed narrowly; civil actions under ERISA are limited only to those parties and actions Congress specifically enumerated in section 1132.

> Congress stated in section 1132(a)(1) that a participant or beneficiary could bring a civil suit not only to recover benefits, but also "to clarify his rights to future benefits under the plan."  29 U.S.C. sec. 1132(a)(1)(B).  Obviously, this section expressly acknowledges the right of participants/beneficiaries to seek a declaratory judgment; just as obviously, fiduciaries are omitted as parties that can bring such an action regarding benefits.  This omission is significant.

> Under [the fiduciary's] view, participants, beneficiaries *and* fiduciaries could bring a suit for declaratory judgment under section 1132(a)(3) to clarify a participant's/beneficiary's rights to benefits.  That interpretation would usurp the language of section 1132(a)(1)–in which Congress limited such actions solely to participants and beneficiaries–and thereby render section 1132(a)(1) meaningless, or at least redundant.  Absent clear congressional intent to the contrary, we will

assume the legislature did not intend to pass vain or meaningless legislation.

*Id.* at 1523-24 (citations and quotations omitted).

The Sixth Circuit examined the decision in *Gulf Life*, and although it disagreed with the Eleventh Circuit that a fiduciary could never invoke the nationwide service of process in 29 U.S.C. § 1132(e)(2), it accepted the Eleventh Circuit's reasoning regarding the Congressional intent behind the clear language in 29 U.S.C. § 1132(a). *See NGS American, Inc.*, 218 F.3d at 526-29. In that case the Sixth Circuit determined that the plaintiff fiduciary's claim for declaratory judgment against a beneficiary to "enforce" ERISA's preemption provision, 29 U.S.C. § 1144, was not cognizable under 29 U.S.C. § 1132(a)(3) because there was nothing to "enforce" against the beneficiary, as he had not violated the plan or ERISA. *Id.* at 530. The court then affirmed the district court's dismissal for lack of jurisdiction holding that the fiduciary could not access ERISA's nationwide service of process provision and could not demonstrate that personal jurisdiction existed. *Id.* at 531.

In *Massey Ferguson Division of Varity Corp. v. Gurley*, the Seventh Circuit addressed whether an employer fiduciary's declaratory judgment action seeking a declaration that a beneficiary was not entitled to a pension fit within the parameters of 29 U.S.C. § 1132(a)(3). 51 F.3d 102 (7th Cir. 1995). The court determined that as the beneficiary was not violating the plan or ERISA, there was nothing for the fiduciary plaintiff to enforce against him. *Id.* at 103. In *Transamerica Occidental Life Ins. Co. v. DiGregorio*, the Ninth Circuit determined that a fiduciary's suit to interpret its contract did not fall within the purview of 29 U.S.C. § 1132(a)(3). 811 F.2d 1249 (9th Cir. 1987). In that case the fiduciary sought a declaratory judgment indicating that an ERISA plan beneficiary was not entitled to double indemnity under the terms

of the plan. *Id.* at 1250-51. *See also, Reynolds v. Stahr*, 758 F.Supp. 1276, 1280 (W.D. Wis. 1991) (holding that fiduciary may not bring declaratory judgment action against beneficiary under 29 U.S.C. § 1132(a)(3)(B)(ii) to determine propriety of denial of benefits); *Connecticut General Life Ins. Co. v. Cole*, 821 F.Supp. 193, 197 (S.D.N.Y. 1993) (finding no jurisdiction pursuant to 29 U.S.C. § 1132(a)(3)(B)(ii) because an "action brought solely to clarify one's obligations as an insurer is *not* a suit to 'enforce' the terms of an ERISA plan"); *KLLM, Inc. Employee Health Protection Plan v. Ontario Community Hosp.*, 947 F.Supp. 262, 266-67 (S.D. Miss. 1996) (finding no subject matter jurisdiction pursuant to ERISA's § 1132(e) because § 1132(a)(3) "does not give a fiduciary the authority to file suit seeking a clarification of its rights under the plan").

The court finds persuasive the reasoning of these other federal courts faced with issues similar to the one posed here. In the action at bar, although BCBST and VP Buildings, Inc. may be entitled to bring a claim under 29 U.S.C. § 1132(a)(3) as fiduciaries, it appears that they are not seeking to "enforce" ERISA or the Plan against DMCM. DMCM is not a party to the Plan, nor is DMCM's threatened arbitration seeking payment a violation of ERISA. DMCM, as a hospital, is not even a traditional ERISA party, such as a beneficiary, participant, or fiduciary. Therefore, BCBST's claim does not fall within the ambit of 29 U.S.C. § 1132(a)(3) such that it may access the nationwide service of process provision. BCBST has not demonstrated personal jurisdiction pursuant to ERISA's nationwide service of process provision.

### C. Jurisdiction Pursuant to the Declaratory Judgment Act

The question remains whether this court has jurisdiction over this action pursuant to the Declaratory Judgment Act. The Declaratory Judgment Act states that:

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. In a case for declaratory judgment, jurisdiction will often turn on the nature of the action threatened by the defendant. The Sixth Circuit has examined the issue of jurisdiction within the context of an action for declaratory judgment:

> As the Supreme Court observed in *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed.291 (1952), "in many actions for declaratory judgment, the realistic position of the parties is reversed. The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the [state] courts."
> The Court then stated the rule governing federal question jurisdiction over declaratory judgment actions: "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, *it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.*" *Id.* Though this language is dictum in *Wycoff*, the Supreme Court has subsequently reiterated the rule, holding that "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." . . .
> The key issue then in determining whether the federal courts have jurisdiction over a claim for declaratory relief is whether the impending or threatened action would raise a federal question. In other words, the question is whether the federal courts would have subject matter jurisdiction over the threatened claim.

*Rodriguez*, 463 F.3d at 476-77 (quoting *Wycoff Co.*, 344 U.S. at 248; *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 16 (1983)).

The Sixth Circuit has examined the appropriateness of declaratory relief:

> "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." The Declaratory Judgment Act is "'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" "'[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial

power.'" . . . This court has adopted a five-factor test to determine when a district
court should exercise jurisdiction over a declaratory judgment:
(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in
clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of
"procedural fencing" or "to provide an arena for a race for res judicata";
(4) whether the use of a declaratory action would increase the friction between
our federal and state courts and improperly encroach on state jurisdiction; and
(5) whether there is an alternative remedy that is better or more effective.

*AmSouth Bank v. Dale*, 386 F.3d 763, 784-85 (6th Cir. 2004) (quoting *Wilton v. Seven Falls Co.*,

515 U.S. 277, 282, 115 S.Ct. 2137 (1995) and *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968

(6th Cir. 2000)).

### 1.     Subject Matter Jurisdiction under the Declaratory Judgment Act

The court recognizes that in many of the cases cited *supra*, the courts exercised

jurisdiction pursuant to the Declaratory Judgment Act despite finding no jurisdiction existed

under ERISA.  *See e.g.*, *Transamerica Occidental Life Ins. Co.*, 811 F.2d at 1253 (finding

jurisdiction under Declaratory Judgment Act because underlying suit could have been a claim for

benefits under ERISA, but concluding that district court could refuse to exercise jurisdiction);

*KLLM, Inc. Employee Health Protection Plan*, 947 F.Supp. at 268-69 (asserting jurisdiction

under Declaratory Judgment Act over health care provider because its counterclaim was asserted

out of basis of contract between beneficiary and ERISA plan); *Cole*, 821 F.Supp. at 197-98

(finding that because defendants could have brought suit under ERISA as beneficiaries,

jurisdiction existed under Declaratory Judgment Act); *Reynolds*, 758 F.Supp. at 1281 (finding

jurisdiction under Declaratory Judgment Act because coercive action was a claim for benefits

under ERISA by beneficiaries).  However, by and large, these cases can be distinguished from

the action at bar here because they involved beneficiaries or assignees of beneficiaries who could

have brought an underlying claim for benefits pursuant to 29 U.S.C. § 1132(a)(1), thus creating federal question jurisdiction. *See Wycoff*, 344 U.S. at 248; *Rodriguez*, 463 F.3d at 476.

DMCM, as a health care provider, is not a beneficiary under ERISA and could not have sued BCBST under ERISA in its own right. Some federal courts have allowed a health care provider to assert rights pursuant to ERISA as an assignee of a beneficiary's ERISA rights relating to health and welfare plans. *See e.g.*, *Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d 1374, 1379 (9th Cir. 1986) (holding that assignee health care provider had standing to sue under ERISA); *Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Insur. Co.*, No. H-05-4389, 2006 WL 1663752 at *7 (S.D. Tex. June 13, 2006) (finding that a health care provider may assert a claim under ERISA if a participant has assigned his rights to benefits under the plan to the health care provider).

However, there is nothing in the record here indicating that DMCM is an assignee of Mr. Thomas' rights. Nor does DMCM purport to be requesting payment on behalf of Mr. Thomas or as an assignee of his rights. DMCM purports to have filed a Request for Arbitration based on its contention that the CCHA applies to BCBST and that BCBST has breached that agreement. Thus, DMCM's claim does not appear to be a claim involving ERISA. The court recognizes that the terms of the Plan, as well as an argument regarding ERISA preemption under 29 U.S.C. § 1144 may be part of BCBST's defense at any arbitration proceeding, but the fact remains that DMCM's claim does not appear to be cognizable under ERISA as it is not one of the parties designated to bring suit under § 1132(a), nor is it an assignee of a beneficiary.

Several federal courts have held that where the record does not demonstrate that a participant or beneficiary assigned his rights to the health care provider, the health care provider

does not have standing to sue under ERISA. Many courts address health care provider standing under 29 U.S.C. § 1132(a)(1)(B) in the context of a defendant ERISA plan's removal of a health care provider's state law claim for benefits to federal court on the basis of complete preemption under ERISA's 29 U.S.C. § 1132(a)(1)(B). Such complete preemption is only available where the health care provider had standing to sue under 29 U.S.C. § 1132(a)(1)(B), the same question relevant to this court's determination of jurisdiction under the Declaratory Judgment Act. *See e.g., Board of Trustees of the Laborers Health and Welfare Trust Fund for Northern California v. Doctors Medical Center of Modesto*, No. C-07-1740 EMC, 2007 WL 2385097 at *4 (N.D. Cal. Aug. 17, 2007) (noting that analysis of subject matter jurisdiction pursuant to Declaratory Judgment Act is analogous to analysis of jurisdiction when a lawsuit is removed from state to federal court).

For example, in *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004), the Third Circuit discussed whether an ERISA plan could remove a hospital's claim to federal court on the grounds that its state law claims for breach of contract were preempted by ERISA. The court noted that the hospital did not have standing to sue under ERISA, 29 U.S.C. § 1132(a), in its own right. *Id.* at 400. It concluded that the ERISA plan bore the burden of establishing an assignment of benefits. *Id.* at 401. There was no evidence in the record that the beneficiaries assigned their benefits to the hospital; therefore, the court held that the hospital's claims could not have been brought under ERISA. *Id.* The court further noted that "the Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself." *Id.* at 402. The Third Circuit held that "the absence of an assignment is dispositive

of the complete pre-emption question. Although the Hospital 'may not defeat removal by

omitting to plead necessary federal questions in a complaint,' it is clear that the Hospital is

asserting a claim that could not be asserted under the civil enforcement provision of ERISA." *Id.*

at 404 (quoting *Franchise Tax Bd. of Cal.*, 463 U.S. at 22).

Other courts have agreed with the Third Circuit's reasoning in *Pascack*. In *Peninsula

Regional Medical Center v. Mid Atlantic Medical Serv.*, the district court addressed whether the

plaintiff hospital's claims against health insurers were preempted by ERISA. 327 F.Supp.2d 572

(D. Md. 2004). In that case the plaintiff hospital sued the defendant health insurers for breach of

agreements under which the hospital agreed to provide medical services to the defendants'

subscribers in return for prompt payment. *Id.* at 573. The hospital claimed that the defendants

failed to pay for "medically necessary" services provided to the defendants' subscribers. The

defendants determined that the services provided were not medically necessary under the terms

of the health care plans, and denied payment for the services. *Id.* at 574. The defendants

claimed that ERISA preempted the hospital's claims because the court would be required to

interpret the term "medically necessary" in the health care plans to resolve the controversy.

Such an interpretation, they argued, would be preempted by ERISA as an interpretation of an

ERISA plan. *Id.* After examining the language of 29 U.S.C. § 1132(a)(1)(B), the court

concluded:

> [w]ithout the specific assignment of rights by a participant or beneficiary,
> however, this Court finds no authority to support the proposition that a third-party
> provider has standing to sue on its own behalf under ERISA. . . . There is nothing
> before this Court to suggest that [plaintiff] was ever assigned the rights of the
> [defendants'] subscribers. To the contrary, Plaintiff's action is based entirely
> upon agreements between [plaintiff] and the [defendants] that are fully separate
> from the subscriber agreements governed by ERISA. [Plaintiff] has no standing
> to sue under ERISA's civil provisions because it is not a participant, beneficiary,

fiduciary, or an assignee thereof.

*Id.* at 576.  *See also, Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health and Benefits Plan*, 500

F.Supp.2d 457, 461 (D. N.J. 2007) ("[b]ecause the record is completely devoid of any evidence

of an assignment, the Court holds that [plaintiff] lacks standing to sue under 29 U.S.C. §

1132(a); its claims are not completely preempted by ERISA; and this Court lacks subject matter

jurisdiction"); *Blue Cross of California v. Anesthesia Care Assoc. Med. Group, Inc.*, 187 F.3d

1045, 1051 (9th Cir. 1999) (finding no subject matter jurisdiction under ERISA for providers'

claims for breach of fee provisions in provider agreements because they were not claims for

benefits under 29 U.S.C. § 1132(a)(1)(B)); *Board of Trustees of the Laborers Health and*

*Welfare Trust Fund for Northern California v. Doctors Medical Center of Modesto*, No. C-07-

1740 EMC, 2007 WL 2385097 at *11 (N.D. Cal. Aug. 17, 2007) (analyzing highly similar facts

and finding no jurisdiction where hospital purported to seek arbitration based on alleged breach

of independent agreement with health care plan and not as assignee of ERISA benefits).

In this case, as in *Pascack,* there is no evidence in the record that Mr. Thomas assigned

his Plan benefits to DMCM, nor does DMCM purport to be asserting rights on behalf of Mr.

Thomas.  As it claimed in the *Doctors Medical Center of Modesto* action in California, DMCM

asserts that its rights to arbitrate arise from the CCHA and not from the Plan.  It claims that it is

alleging the right to payment based on the terms of the CCHA rather than a right to Mr. Thomas'

benefits under the Plan.  BCBST contends that it is not a party to the CCHA, and the parties

argue over the meaning of the terms of that agreement.  However, this court is not in a position

to interpret the meaning of terms of an agreement between Blue Cross of California and DMCM.

That is a task for the California arbitrator.  Even if this court were to interpret the CCHA and the

terms of the Plan, BCBST would still need to defend itself in the arbitration. It may argue in that arbitration that the CCHA does not apply to it and that DMCM's claims are preempted by ERISA. Further, if BCBST receives an unfavorable ruling from the California arbitrator, it can challenge that ruling in federal court in the appropriate venue at that time. Because there is no evidence that DMCM is attempting to bring its claim against BCBST as an assignee, this court concludes that it lacks subject matter jurisdiction under the Declaratory Judgment Act.

### 2. Personal Jurisdiction Pursuant to the Declaratory Judgment Act

Furthermore, even if BCBST could establish subject matter jurisdiction under the Declaratory Judgment Act, BCBST must also demonstrate that this court may exert personal jurisdiction over DMCM. *See e.g., Calphalon Corp.*, 228 F.3d 718 (affirming district court dismissal of declaratory judgment action for lack of personal jurisdiction based on plaintiff's inability to demonstrate prima facie case of defendant's minimum contacts with forum state). As stated *supra*, ERISA's nationwide service of process provision does not apply. Thus, BCBST must make out a prima facie case of jurisdiction based on certain minimum contacts sufficient to satisfy the Due Process Clause. Although BCBST's burden is not onerous, it still must demonstrate that DMCM has certain minimum contacts with Tennessee. Seemingly relying on ERISA's nationwide service of process provision, BCBST does not make any effort to establish DMCM's minimum contacts with Tennessee. BCBST submits affidavits and exhibits indicating that DMCM wrote letters to its offices in Tennessee requesting a review of BCBST's denial of payment DMCM claimed was due. [Court Doc. No. 16-7]. DMCM submits the affidavit of its Chief Financial Officer ("CFO"). [Court Doc. No. 5, Declaration of Greg Berry in Support of Motion to Dismiss ("Berry Decl.")]. The CFO attests that DMCM is not incorporated in

Tennessee, has no officers or directors who reside in Tennessee, has no operations or offices in Tennessee, does not have any employees living in Tennessee, and that it does not have any contractual relationships with any people in Tennessee to provide hospital services. Berry Decl., ¶¶ 2-10. BCBST does not provide any facts in the record that conflict with Mr. Berry's declaration.

The parties do not appear to disagree that DMCM does not have any contacts with Tennessee. DMCM has provided this court with an affidavit demonstrating its lack of connections with Tennessee. *See* Berry Decl. This court recognizes that BCBST must only demonstrate a prima facie case of personal jurisdiction and that conflicting facts presented by DMCM must be disregarded. However, BCBST does not appear to contest DMCM's assertion that it lacks any significant contacts with Tennessee.

The court concludes that BCBST has not demonstrated that this court may exercise either general or specific jurisdiction over DMCM. There are no facts suggesting that DMCM has the kind of continuous and systematic contacts with Tennessee necessary to support general juridiction. *See Kerry Steel, Inc.*, 106 F.3d at 149. Nor do the facts demonstrate the necessary "purposeful availment" of Tennessee law sufficient to support a finding of specific jurisdiction. The mere entrance into a contract with a Tennessee corporation does not mean that an out-of-state corporation has purposefully availed itself of the benefit of Tennessee law. *See id.* at 151. In this case, there is no indication that DMCM even went so far as to enter into a contractual agreement with BCBST itself, only BlueCross BlueShield of California.

DMCM's only relationship with Tennessee according to the record constitutes an exchange of letters sent to BCBST's Tennessee offices regarding DMCM's appeal of BCBST's

decision not to pay for Mr. Thomas' treatment. The Sixth Circuit has found that telephone calls and letters, without more, constitute only random and attenuated contacts with a forum state insufficient to establish specific jurisdiction. *See id.* (relying on *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183-84 (1985)).

It further does not appear that BCBST's claim against DMCM arises from DMCM's activities in Tennessee. DMCM treated Mr. Thomas in California. DMCM treats patients in California and provides no medical treatment in Tennessee. The underlying claims at issue in this case arose from medical treatment DMCM provided in California. Finally, it does not appear reasonable, in the absence of a nationwide service of process provision, to force DMCM to litigate its claim for payment in Tennessee when the record demonstrates only the most tenuous contact with one Tennessee corporation. Thus, the court concludes that personal jurisdiction over DMCM does not exist as necessary to support a cause of action pursuant to the Declaratory Judgment Act.


### III.     Conclusion

This court concludes that although it has subject-matter jurisdiction in this matter pursuant to ERISA, it lacks personal jurisdiction under ERISA. Further, BCBST has failed to demonstrate that subject matter jurisdiction or personal jurisdiction exists in this action pursuant to the Declaratory Judgment Act. Therefore, this court must DISMISS this action for lack of jurisdiction. For the reasons addressed *supra*, the court will GRANT DMCM's motion to dismiss BCBST's amended complaint.

A separate order will enter.

ENTER this the 8th day of January, 2008.


                        _____/s/ R. Allan Edgar_____
                             R. ALLAN EDGAR
                        UNITED STATES DISTRICT JUDGE